**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

SIMMION BASHON DEMERY               CIVIL ACTION NO. 15-2268

VERSUS                              JUDGE S. MAURICE HICKS, JR.

TODD S. JOHNS[1]                    MAGISTRATE JUDGE HAYES

**MEMORANDUM RULING**

Before the Court is an appeal of the Bankruptcy Court's denial of requested attorney's fees by appellant Simmion Bashon Demery ("Demery"). See Record Document 4. For the reasons contained in the instant Memorandum Ruling, the Bankruptcy Court's ruling denying Demery's Application for Compensation by Attorney for Debtor and Motion to Reconsider is **REVERSED AND REMANDED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 3, 2013, Demery filed a voluntary Chapter 13 bankruptcy petition in the Bankruptcy Court in Shreveport, Louisiana. See Record Document 1-3 (Bankruptcy Court docket sheet). The original plan called for payments of $420.00 per month for a term of 60 months. See Record Document 4 at 6. However, because all of the parties apparently believed that Demery owed money to at least two state or local taxing entities, the Bankruptcy Court rejected the original plan and confirmed an amended plan calling for $560.00 monthly payments. See id.; see Record Document 1-3.

On April 14, 2015, Demery met with his counsel, David Welch ("Welch"), to discuss his financial situation. See Record Document 4 at 6-7. Demery informed Welch that his

---

[1] Todd S. Johns recently replaced Lucy G. Sikes as the standing Trustee for Chapter 13 bankruptcy cases in the Shreveport Division of the Western District of Louisiana. As such, Todd S. Johns has replaced Lucy G. Sikes as the appellee in the instant action.

financial situation had worsened due to rising expenses, forcing him to borrow against his 401(k) plan to cover his monthly expenses. See id. Demery also informed Welch that he expected furloughs in the near future from his employer Schlumberger as a result of the decline in oil prices. See id. Welch discovered that none of the taxing entities to whom Demery ostensibly owed money had ever filed a proof of claim with the Bankruptcy Court. See id. Welch advised Demery that he could file a modified plan on his behalf that would reduce Demery's required payments and remove future payments to be made to these taxing entities, though those taxing entities could object to the plan and assert their claims against Demery. See id. Welch also advised Demery that even if these entities were to object to the plan, it was possible that Demery's payments could be suppressed temporarily until his income stabilized. See id. at 8. Demery requested that Welch file a modified plan with the Bankruptcy Court, and Welch filed the modified plan and accompanying materials on April 24, 2015. See id.; see Record Document 1-3.

On May 27, 2015, without consulting Welch first, Demery left his job with Schlumberger, paid off his 401(k) loans, cashed out the remaining balance of his 401(k), and began searching for a new job. See Record Document 4 at 8. On June 3, 2015, the Chapter 13 Trustee filed an objection to confirmation of Demery's modified plan. See id. On June 4, 2015, Welch reviewed the Trustee's objection, took notes regarding the objection, and discussed the matter with a partner in the firm. See id. Welch later began drafting the response to the objection. See id. Welch met with Demery on June 24, 2015 to discuss the objection. See id. At this meeting, Demery informed Welch for the first time of the fact that he had left his job and cashed out his 401(k). See id. Welch informed Demery that he had converted an exempt asset to a non-exempt asset, a fact that would

have to be disclosed to the Bankruptcy Court and that would likely prompt the Chapter 13 Trustee to assert an interest in the 401(k) proceeds. See id. at 8-9.

In response to this new situation, Welch informed Demery that he essentially had two options: (1) disclose the liquidation of the 401(k) and deposit the bulk of the remaining proceeds into a tax deferred retirement account within 60 days of the withdrawal, reserving only enough to cover Demery's reasonable and necessary expenses and fund his plan payments while searching for a job; or (2) retain the proceeds, voluntarily dismiss his case, and request that the dismissal of the case be without prejudice to his ability to re-file a subsequent bankruptcy petition. See id. at 9. On July 10, 2015, Demery requested that his case be dismissed. See id. On July 15, 2015, Welch filed an Ex Parte Motion to Voluntarily Dismiss Demery's case, a Motion that the Bankruptcy Court granted later the same day. See id.

After the voluntary dismissal of the case, one of Welch's paralegals sent an email to the Chapter 13 Trustee and two paralegals working for the Trustee requesting that funds be retained in the Trustee's possession for payment of Welch's fee. See id. at 9-10. Welch obtained Demery's consent to a fee application requesting a fee of $350.00, and Welch filed the Application for Administrative Compensation/Expenses (the "fee application") on July 28, 2015. See id. at 10. On July 29, 2015, the Bankruptcy Court denied the fee application without explanation. See id. Welch's paralegal again contacted the Chapter 13 Trustee and the Trustee's two paralegals requesting that the $350.00 be retained in the Trustee's account until the Bankruptcy Court could decide a Motion to Reconsider its denial of the fee application. See id. Despite this request, the Trustee mistakenly disbursed the funds to Demery's creditors in early August 2015. See id. On

August 7, 2015, Welch filed a Motion to Reconsider the denial of the fee application and requested a hearing. See id. The Bankruptcy Court denied the Motion without a hearing, holding that the matter was moot. See id.; see Record Document 1-2.

Demery filed the instant appeal of the denial of the fee application and the Motion to Reconsider on August 24, 2015. See Record Document 1. On March 3, 2016, Demery filed a "Notice of Statement Regarding Change in Facts" and a Chapter 13 Trustee Report in which he confirmed that the amount of funds necessary to pay the requested fees that are the subject of the instant appeal had been refunded to the Chapter 13 Trustee. See Record Document 6. The Chapter 13 Trustee never filed a brief with the Court.

## LAW AND ANALYSIS

### A.    Jurisdiction

The United States Bankruptcy Court has the authority to issue final orders pursuant to 28 U.S.C. § 157(b). This United States District Court for the Western District of Louisiana, Shreveport Division has subject matter jurisdiction, pursuant to 28 U.S.C. § 158(a)(1) and 28 U.S.C. § 1334(b), to hear appeals from a final order of the Bankruptcy Court. "Final orders" of a Bankruptcy Court under 28 U.S.C. § 158 include both (1) "a final determination of the rights of the parties to secure the relief they seek" and (2) "a final disposition of a discrete dispute within the larger bankruptcy case." Bartee v. Tara Colony Homeowners Ass'n (In re Bartee), 212 F.3d 277, 282 (5th Cir. 2000). This is an appeal of the final order entered from the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division on July 29, 2015, denying Demery's fee application, a "discrete dispute within the larger bankruptcy case." Id.; see Record Document 1-1.

**B.     Standard of Review**

A District Court reviews a Bankruptcy Court's decision on a fee application by a debtor's attorney under an abuse of discretion standard of review. See Cahill v. Walker & Patterson, P.C., 428 F.3d 536, 539 (5th Cir. 2005). "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." Id.

**C.     Analysis**

Under 11 U.S.C. § 330(a)(1), a Bankruptcy Court has discretion to award a bankruptcy debtor's attorney "reasonable compensation for actual necessary services rendered by the . . . attorney." The questions Demery raises in this appeal are (1) whether the fee application is moot; (2) whether the Bankruptcy Court erred by failing to hold a hearing or make findings of fact and conclusions of law on the fee application; (3) whether the alleged practice of the Bankruptcy Court in the Shreveport Division of denying all attorney's fees requests for unsuccessful post-confirmation modified plans filed on behalf of Chapter 13 debtors is erroneous under binding Fifth Circuit precedent; and (4) whether the $350.00 fee requested for post-confirmation services performed by Welch in the instant action was reasonable.

**i.     Whether the Fee Application Is Moot.**

Demery argues that the Bankruptcy Court erred in denying his Motion for Reconsideration of the fee application on the basis that the fee application is moot.[2] See

---

[2] Though a Bankruptcy Court's decision on a Motion to Reconsider may not generally be a final order from which an appeal from the Bankruptcy Court may be taken under 28 U.S.C.§§ 157(b) and 158(a)(1), the Bankruptcy Court's order on the Motion to Reconsider

Record Document 4 at 23. Demery argues that the fee application is not moot because "approval of a fee by the Court is entirely independent of Counsel's ability to actually collect that fee, whether it be from the Chapter 13 Trustee or elsewhere," such as directly from the debtor or through voluntary payments by the debtor's friends or family members. Id. Additionally, after filing the instant appeal and his appellate brief, Demery filed a "Notice of Statement Regarding Change in Facts" and a Chapter 13 Trustee Report in which he confirmed that the amount of funds necessary to pay the requested fees that are the subject of the instant appeal had been refunded to the Chapter 13 Trustee. See Record Document 6.

In Denying Demery's Motion to Reconsider, the Bankruptcy Court held that the fee application is moot because "the Chapter 13 Trustee balance on hand is zero." Record Documents 1-3. Demery argues that the case was never moot even when the balance in the account was $0 because whether a fee should be granted and whether the attorney can actually collect the fee are two separate questions. However, the Court need not address this argument. A case is moot when the question the litigants place before the court can no longer affect the rights of the litigants in the case. See DeFunis v. Odegaard, 416 U.S. 312, 316 (1974). The balance in the Chapter 13 Trustee's account for Demery's bankruptcy estate is now $350.00 as a result of the refund to the Trustee. Thus, even if

---

in the instant action held that the entire matter is moot. See Record Document 1-2. Mootness is a question of subject matter jurisdiction, as federal courts only have subject matter jurisdiction to decide live "cases" and "controversies" within the meaning of Article III, Section 2 of the United States Constitution. See DeFunis v. Odegaard, 416 U.S. 312, 316 (1974). Thus, though a Bankruptcy Court's order on a Motion to Reconsider may not generally be appealable, because the Motion to Reconsider in the instant action called into question the courts' subject matter jurisdiction over the entire fee dispute, the Court must address that order and whether the fee dispute is moot.

the case was moot when the balance was $0, the case is certainly no longer moot, as the Trustee currently has the funds available to pay the requested fee.

> ii.    **Whether the Bankruptcy Court Must Hold a Hearing and Make Findings of Fact and Conclusions of Law Regarding the Fee Application.**

The Bankruptcy Court denied Demery's fee application in the instant action without holding a hearing or explaining in its order why the application was denied, with the order simply stating that "the relief sought in this order is denied." Record Document 1-2. As explained in Section C, i, *supra*, the Bankruptcy Court then held that the fee application was moot in denying Demery's Motion to Reconsider the fee application. See Record Document 1-3. Thus, the Bankruptcy Court never provided any reasons for the denial of the fee application. Citing Fifth Circuit precedent, Demery argues that the Court's failure to (1) hold a hearing on the fee application or (2) provide reasons for the denial of the fee application constituted an abuse of discretion. See Record Document 4 at 22-23.

The Court finds that though the Bankruptcy Court's failure to hold a hearing on the fee application was not an abuse of discretion, the failure to provide reasons for the denial of the fee application was an abuse of discretion. It appears from Fifth Circuit precedent that the Bankruptcy Court must at least "explain why compensation was awarded at the level it was given" or why compensation is denied, particularly considering the "harsh result that obtains when fees are denied in their entirety." In re Evangeline Refining Co., 890 F.2d 1312, 1328 (5th Cir. 1989). In the absence of such an explanation, "it is difficult, if not impossible, for an appellate court to engage in meaningful review of a fee award." Id. at 1327; see also McCoy v. Hardeman (In re Tahah), 330 B.R. 777, 781 (B.A.P. 10th Cir. 2005) (while a Bankruptcy Court is not required to conduct "a detailed review and

discussion of the line by line entries" in a fee application, it must at least provide some basis upon which an appellate court could determine whether the Bankruptcy Court's decision was an abuse of discretion). Thus, the Bankruptcy Court's failure to explain the reasons for the denial of the fee application, such as by making even cursory findings of fact and conclusions of law, was an abuse of discretion by following "improper procedures in calculating the fee award." <u>Cahill</u>, 428 F.3d 539.

However, Demery points to no authority indicating that a hearing on the fee application is required. While holding a hearing on the fee application may be the best way to decide the merits of the application, this Court leaves that decision to the Bankruptcy Court on remand. Thus, though the Bankruptcy Court is not required to hold a hearing on the matter, on remand the Bankruptcy Court nonetheless must explain why compensation was granted or denied and why "compensation [if any] was awarded at the level it was given." <u>In re Evangeline Refining Co.</u>, 890 F.2d at 1328.

### iii. Whether the Bankruptcy Court's Alleged Per Se Denial of All Attorney's Fees Requests for Unsuccessful Post-Confirmation Modified Plans Filed on Behalf of Chapter 13 Debtors Is Erroneous.

Demery argues that the denial of fees in the instant action is not unique. <u>See</u> Record Document 4 at 21-22. He argues that the standard practice of the Bankruptcy Court in the Shreveport Division is to deny all fee requests for services rendered toward filing post-confirmation modified plans on behalf of Chapter 13 debtors when those modified plans are ultimately not confirmed. <u>See id.</u> According to Demery, this practice violates the Fifth Circuit's holding in <u>Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)</u>, 783 F.3d 266 (5th Cir. 2015) (*en banc*).

Demery's argument correctly describes the holding in In re Woerner. There, the Fifth Circuit expressly overturned its old standard for determining attorney's fees in bankruptcy cases and replaced it with a new standard. See id. at 268. Before In re Woerner, only attorneys' services that resulted in an "identifiable, tangible, and material benefit to the bankruptcy estate" were compensable services. Id. at 270. In In re Woerner, the Fifth Circuit rejected this standard as being incompatible with the text and intent of Congress in drafting 11 U.S.C. § 330, the statute that provides for compensation to attorneys and others who perform services benefiting a bankruptcy estate. See id. at 271-277. The Fifth Circuit replaced the old standard with a prospective standard that "looks to the necessity or reasonableness of legal services at the time they were rendered." Id. at 276. Thus, the ultimate success or failure of legal services to secure an "identifiable, tangible, and material benefit to the bankruptcy estate," though "relevant to" deciding whether to award compensation to an attorney, is "not dispositive of attorney compensation." Id. at 270, 276.

Though Demery correctly states the standard for awarding attorney's fees in bankruptcy cases, there is no evidence that the Bankruptcy Court applied the incorrect, pre-In re Woerner standard in this case. As explained in Section C, ii, supra, the Bankruptcy Court never explained why it denied the fee application; rather, the Bankruptcy Court simply denied the application without explanation. Thus, though the Court holds that the Bankruptcy Court followed an incorrect procedure in handling the fee application, it cannot hold that the Bankruptcy Court applied an incorrect substantive standard in reviewing the fee application.

iv.        **Whether the Fees Requested in the Instant Action Are Reasonable.**

Finally, Demery argues that the $350.00 in attorney's fees requested in the instant action are reasonable under the <u>In re Woerner</u> standard, the lodestar method for calculating attorney's fees, and the standard practice in the Bankruptcy Courts of the Western District of Louisiana. <u>See</u> Record Document 4 at 17-22. He argues that Welch performed 2.9 hours of work in drafting the necessary documents for his plan modification and performing other services related to the plan modification. <u>See id.</u> at 19. Under the standard practice in the Western District of Louisiana, the Bankruptcy Courts award a standard $500.00 attorney's fee for a confirmed post-confirmation modified plan; under the lodestar method at $225.00 per hour, the fee for Welch's services would be $790.00. <u>See id.</u> at 18-20. Thus, Demery argues that the requested fee of $350.00 is reasonable considering the services performed, the benefits those services would have obtained for Demery if successful, and the fact that the services were ultimately unsuccessful. <u>See id.</u> at 17-22.

As the Bankruptcy Court did not explain why it denied the fee application, the question of the reasonableness of the fees requested is not properly before the Court in the instant appeal. The decision regarding whether the requested fees are reasonable belongs to the Bankruptcy Court, with all of its expertise in bankruptcy matters, in the first instance on remand.

**CONCLUSION**

For the reasons set forth above, the rulings issued on Demery's fee application and Motion to Reconsider by the Bankruptcy Court are **REVERSED AND REMANDED** to the Bankruptcy Court for a determination on the merits of the fee application and an

explanation as to why the application was granted or denied; if fees are awarded, the Bankruptcy Court shall determine whether $350.00 is a reasonable fee.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 2nd day of March, 2017.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE